Julie Pollock, CSB #346081
Email: jpollock@bm.net
BERGER MONTAGUE PC
505 Montgomery Street Suite 625
San Francisco, California 94111
Telephone: (800) 424-6690

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE SWACKER, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| BLOCK, INC., f/k/a SQUARE, INC. and SUTTON BANK, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## I.      INTRODUCTION

1.      Plaintiff Jeanette Swacker is a victim of fraud and identity theft.

2.      While Plaintiff was traveling to Georgia in October 2022, she received an email from Verizon congratulating her on purchasing a new iPhone 12.

3.      The purchase had been made at a Walmart in North Carolina.

4.      Moreover, Plaintiff is an AT&T customer, not a Verizon customer, and already owns an iPhone 13.

5.      Plaintiff contacted Verizon the same day and filed a police report concerning her identity theft on October 31, 2022.

6.      Plaintiff contacted Cash App on December 5, 2022 in order to obtain access to the account.

COMPLAINT - 1

7.     Before Plaintiff could obtain access, an unidentified perpetrator (the "Perpetrator") made two unauthorized transactions totaling $12,867.11 (the "Stolen Funds").

8.     Plaintiff disputed the charges with Cash App on December 5, 2022 and provided Cash App support with copies of her police report and correspondence regarding the new fraudulent account.

9.     On or about December 20, 2022, Cash App denied Plaintiff's claim.

10.    In response to a request for supporting documentation, Cash App provided only a summary of basic information about the two unauthorized transactions.

11.    Plaintiff followed up with Cash App and subsequently filed a complaint against Cash App with the Consumer Financial Protection Bureau.

12.    In response, Cash App stated that it could not confirm that Plaintiff was the true account holder and has continued to deny a refund to Plaintiff's account for the Stolen Funds.

13.    Plaintiff brings claims against Defendants for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*.

## II.    PARTIES

14.    Plaintiff Jeanette Swacker is a natural person and citizen of North Carolina residing in Burlington, North Carolina.

15.    Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6). The accounts at issue were used for personal, family, or household purposes.

16.    Defendant Block, Inc. is an American financial services merchant services aggregator and mobile payment company headquartered in San Francisco, California.

17.    Defendant Block, Inc. is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9) in its own right, and as the agent of Sutton Bank.

18.    Defendant Block, Inc. is also a provider of electronic fund transfer services. *See* 12 C.F.R. § 1005.14(a).

19.    Defendant Sutton Bank is a state-chartered banking association and is chartered and located in Ohio.

20.     Defendant Sutton Bank is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

### III.     JURISDICTION AND VENUE

21.     The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331.

22.     Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

23.     Jurisdiction over Plaintiff's claim for declaratory relief is conferred on this Court by 28 U.S.C. § 2201.

24.     Venue is proper in this district because Defendant Block, Inc.'s headquarters are located in this district and a substantial part of the events and occurrences underlying this litigation occurred within this district.

### IV.     FACTS

25.     Cash App is a popular mobile payment software application offered by Defendant Block, Inc. that facilitates sending and receiving money.

26.     On information and belief, Defendant Sutton Bank holds the accounts of Cash App's users.

27.     On information and belief, at all times material herein, Defendants operated as a common enterprise while engaging in unlawful conduct, including the violations of law described herein.

28.     In light of the foregoing, Defendants are jointly and severally liable for the acts or practices alleged herein.

29.     While Plaintiff was traveling to Georgia in October 2022, she received an email from Verizon congratulating her on purchasing a new iPhone 12.

30.     The purchase had been made at a Walmart in North Carolina.

31.     Moreover, Plaintiff is an AT&T customer, not a Verizon customer, and already owns an iPhone 13.

COMPLAINT - 3

1    32.    Plaintiff contacted Verizon the same day to dispute the purchase.

2    33.    On October 31, 2022, Plaintiff filed a police report with the Burlington Police

3    Department (Case No. 2022-06287).

4    34.    During November 2022, Plaintiff lost access to her Cash App account.

5    35.    Plaintiff immediately contacted Cash App in order to obtain access to the account.

6    36.    Before Plaintiff could obtain access, an unidentified perpetrator (the

7    "Perpetrator") made two unauthorized transactions totaling $12,867.11 (the "Stolen Funds").

8    37.    Plaintiff disputed the charges with Cash App on December 5, 2022 and provided

9    Cash App support with copies of her police report and correspondence regarding the new

10    fraudulent account.

11    38.    On or about December 20, 2022, Cash App denied Plaintiff's claim.

12    39.    On December 20, 2022, Plaintiff filed a complaint with the Consumer Financial

13    Protection Bureau (Complaint No. 221221-9989939).

14    40.    On December 21, 2022, Cash App provided the purported documentation

15    underlying their decision, which consisted of basic details of the disputed transactions.

16    41.    On January 2, 2023, Cash App contacted Plaintiff regarding her CFPB complaint

17    and stated that it could not confirm that Plaintiff was the true account holder and requested

18    additional documentation.

19    42.    Despite the fact that the transactions were inconsistent with Plaintiff's banking

20    history and prior account usage, Defendants still repeatedly denied a refund to Plaintiff's account

21    for the Stolen Funds.

22    43.    On July 14, 2023, Plaintiff timely opted out of arbitration pursuant to the terms of

23    CashApp's accountholder agreement.

24                    **V.    FIRST CLAIM FOR RELIEF**

25               **(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*)**

26    44.    Plaintiff repeats and realleges the allegations contained in the above paragraphs

27    and incorporates them with the same force and effect as if set forth specifically herein.

COMPLAINT - 4

45.     The EFTA places sharp limitations on consumer liability for unauthorized transactions.

46.     Because Plaintiff did not give actual authority to the Perpetrator to use her Cash App application, the transactions initiated by the Perpetrator constituted unauthorized electronic fund transfers under § 1693a(12). See, *e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.") (hereafter, the "Fraud Exception").

47.     Such transactions do not qualify for the exception under § 1693a(12)(A) because Plaintiff did not "furnish" the Perpetrator with her Cash App application information; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by someone who obtained the card information from Plaintiff through unknown fraudulent means and are therefore unauthorized electronic fund transfers. *See, e.g.*, Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

48.     Moreover, "[I]f the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." 12 CFR Sec. 1005.6 ("Liability of consumer for unauthorized transfers"); *see also* 15 U.S.C. § 1693g ("Consumer liability").  Plaintiff promptly notified Defendants.

49.     Defendants violated the EFTA by holding Plaintiff responsible for an unauthorized transfer amount exceeding the limits set forth in 15 U.S.C. § 1693g(a).

50.     Pursuant to the EFTA, 15 U.S.C. § 1693f(a), Defendants must investigate an unauthorized transaction once the consumer provides a minimum of information.

51.     The statute provides in relevant part that:

> [O]nce the consumer provides oral or written notice in which the consumer --

1

    (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;

2

    (2) indicates the consumer's belief that the documentation, or, . . . the consumer's account, contains an error and the amount of such error; and

3

4

    (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred,

5

    the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days.

6

7

    Thus, once the account holder provides (1) the name and account number of the consumer; (2) indicates a belief that there is an error and (3) sets forth the reasons for the belief that there is an error, Defendants must ("shall") investigate.

8

9

10

15 U.S.C. § 1693f (Error Resolution).

11

    52.    The EFTA, Section 1693(f) defines "errors" broadly:

12

    (f) ACTS CONSTITUTING ERROR.-- For the purpose of this section, an error consists of--

13

    (1) an unauthorized electronic fund transfer;

14

    (2) an incorrect electronic fund transfer from or to the consumer's account;

15

    (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;

16

17

    (4) a computational error by the financial institution;

    (5) the consumer's receipt of an incorrect amount of money from an electronic terminal;

18

19

    (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this title; or

20

    (7) any other error described in regulations of the Bureau.

21

22

*See also* Regulation E, 12 C.F.R. § 1005.33 ("Procedures for resolving errors"); Official

23

Interpretation of Regulation E, 11(b)(1) ("Notice of Error From Sender").

24

    53.    If the financial institution determines after its investigation that no error has

25

occurred, it must provide an explanation and inform the consumer of certain rights.

26

    54.    Specifically, 15 U.S.C. § 1693f states:

27

COMPLAINT - 6

1    (d) Absence of error; finding; explanation

2    If the financial institution determines after its investigation pursuant
3    to subsection (a) or (c) that an error did not occur, it shall deliver or
     mail to the consumer an explanation of its findings within 3
4    business days after the conclusion of its investigation, and upon
     request of the consumer promptly deliver or mail to the consumer
5    reproductions of all documents which the financial institution relied
     on to conclude that such error did not occur. The financial
6    institution shall include notice of the right to request reproductions
7    with the explanation of its findings.

8    55.    Here, Defendants violated these provisions by failing to provide the consumer

9    with a meaningful explanation and the required disclosure of the consumer's right to documents.

10   56.    The EFTA places the burden of proof on the financial institution to demonstrate

11   that challenged transfers were authorized or, if they were unauthorized, that the consumer can be

12   held liable for them. 15 U.S.C. § 1693g(b).

13   57.    Specifically, pursuant to Section 1693g(b), it is Defendants' burden to prove that

14   the disputed transfer was authorized:

15   (b) BURDEN OF PROOF.--In any action which involves a
     consumer's liability for an unauthorized electronic fund transfer, the
16   burden of proof is upon the financial institution to show that the
     electronic fund transfer was authorized or, if the electronic fund
17   transfer was unauthorized, then the burden of proof is upon the
     financial institution to establish that the conditions of liability set
18   forth in subsection (a) have been met, and, if the transfer was
19   initiated after the effective date of section 905, that the disclosures
     required to be made to the consumer under section 905(a)(1) and (2)
20   were in fact made in accordance with such section.

21

22   58.    Defendants violated the EFTA by refusing to refund the statutorily required

23   amount of the unauthorized transfer without having satisfied their burden of proof.

24   59.    An accountholder's rights under the EFTA are non-waivable. Section 1693l

25   ("Waiver of rights") states, in relevant part: "No writing or other agreement between a consumer

26   and any other person may contain any provision which constitutes a waiver of any right

27   conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

60.     Defendants' acts and omissions set forth above constitute violations of the EFTA.

61.     As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff is entitled to an award of statutory damages, actual damages, including damages for emotional distress, and attorney's fees and costs.

62.     Defendants' refusal to properly investigate or resolve disputes in the consumer's favor, failure to acknowledge and honor the Fraud Exception, and their denial of a refund despite failing to satisfy their burden of proof constitute a failure to investigate in good faith and a failure to establish a reasonable basis for believing that the consumer's accounts were not in error, and also constitutes a knowing and willful conclusion that the accounts in question were not in error when such conclusion could not reasonably have been drawn from the available evidence. These practices thus constitute a violation of 1693f(e), entitling Plaintiff to treble damages.

## VI.     SECOND CLAIM FOR RELIEF
**(Unlawful Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.)**

63.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

64.     California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq*.

65.     Defendant Block, Inc. is headquartered in California and all or a substantial part of the misconduct at issue occurred in California and/or emanated from California.

66.     Defendants' business practices fail to comply with the requirements of the EFTA and Regulation E and are therefore unlawful under the UCL.

67.     The EFTA places sharp limitations on consumer liability for unauthorized transactions. *See* 15 U.S.C. § 1693g ("Consumer liability"); 12 C.F.R. § 1005.6 ("Liability of consumer for unauthorized transfers").

68.     The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two

business days after learning of the loss or theft of an access device such as a prepaid debit card. 12 C.F.R. § 205.6(b)(1).

69.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

70.     In addition, the EFTA requires that denials include a meaningful explanation of the reason for the denial and a disclosure of the consumer's rights to documents. 15 U.S.C. § 1693f(d)

71.     As set forth above, Defendants failed to comply with these and other requirements of the EFTA and Regulation E.

72.     Under the UCL, Plaintiff may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of or through the use of these unlawful acts or practices.

73.     Plaintiff is entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unlawful business practices.

74.     In addition, Plaintiff may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

## VII.    THIRD CLAIM FOR RELIEF
### (Unfair Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200)

75.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

76.     Defendants' acts or practices, including failure to properly investigate accountholder's disputes, placement of the onus on cardholder to prove that transactions are fraudulent, and failure to promptly credit cardholder's accounts for fraudulent transactions despite both legal obligations and promises to do so, are unfair.

77.     Plaintiff lost money as a result of Defendants' violations of the UCL, specifically the amounts she was entitled to be reimbursed for fraudulent transactions but did not receive.

78.     Under the UCL, Plaintiff may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of and through the use of these unlawful acts and practices.

79.     Plaintiff is entitled to declaratory and injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unfair business practices.

80.     Plaintiff may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks judgment in her favor and damages against Defendants:

A.     An award of actual damages, including damages for emotional distress, treble damages, statutory damages, punitive damages, and nominal damages;

B.     An order of restitution;

C.     Prejudgment interest;

D.     Attorney's fees, costs, and expenses;

E.     An order finding and declaring that Defendants' acts and practices as challenged herein are unlawful, unfair, and fraudulent;

F.     Injunctive relief precluding Defendants from continuing to engage in the acts or practices described throughout this Complaint; and

G.     Such other and further relief as may be necessary, just, and proper.

## IX.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

1      RESPECTFULLY SUBMITTED AND DATED this 8th day of August, 2023.

2                                        TERRELL MARSHALL LAW GROUP PLLC

3
       By: */s/ Beth E. Terrell*, CSB #178181
4           Beth E. Terrell, CSB #178181
            Email: bterrell@terrellmarshall.com
5           936 North 34th Street, Suite 300
            Seattle, Washington 98103
6           Telephone: (206) 816-6603
            Facsimile: (206) 319-5450
7

8      BERGER MONTAGUE PC

9
       By: */s/ Julie Pollock*, CSB #346081
10          Julie Pollock, CSB #346081
            Email: jpollock@bm.net
11          505 Montgomery Street Suite 625
            San Francisco, California 94111
12          Telephone: (800) 424-6690

13          E. Michelle Drake, *Pro Hac Vice Forthcoming*
            Email: emdrake@bm.net
14          BERGER MONTAGUE PC
            1229 Tyler Street NE, Suite 205
15          Minneapolis, Minnesota 55413
            Telephone: (612) 594-5999
16          Facsimile: (612) 584-4470
17
            Daniel A. Schlanger, *Pro Hac Vice Forthcoming*
18          Email: dschlanger@consumerprotection.net
            H. Cooper Ellenberg, *Pro Hac Vice Forthcoming*
19          Email: hellenberg@consumerprotection.net
            SCHLANGER LAW GROUP, LLP
20          80 Broad Street, Suite 3103
            New York, NY 10004
21          Telephone: (212) 500-6114
            Facsimile: (646) 612-7996
22

23          *Attorneys for Plaintiff*

24

25

26

27

COMPLAINT - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), the undersigned attests that each of the other Signatories have concurred in the filing of the document.

By: */s/ Beth E. Terrell*, CSB #178181
      Beth E. Terrell, CSB #178181
      Email: bterrell@terrellmarshall.com
      936 North 34th Street, Suite 300
      Seattle, Washington 98103
      Telephone: (206) 816-6603
      Facsimile: (206) 319-5450

COMPLAINT - 12